Filed 7/14/26  Zheng v. Izhaky CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| EDWARD ZHENG, | B348129 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24STCP03482) |
| v. | |
| DANIEL IZHAKY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Affirmed.

Law Office of Steven S. Wang and Steven S. Wang for Defendant and Appellant.

Glaser Weil Fink Howard Jordan & Shapiro, Elizabeth A. Sperling, and Allyson N. Werner for Plaintiff and Respondent.

Defendant and appellant Daniel Izhaky (Izhaky) appeals from an order granting plaintiff and respondent Edward Zheng's (Zheng's) petition to confirm an arbitration award.  We consider whether, as Izhaky argues, the trial court should have granted his request to quash service of the petition and, failing that, should have granted his request to continue the hearing on confirmation of the award.

## I.  BACKGROUND

### A.    *The Arbitration Agreement*

Izhaky and Zheng were equal shareholders in a corporation called United Safety Technology Inc. (UST).  They entered into a shareholders' agreement (the agreement) in 2020.

Article 11.1 of the agreement, which addresses dispute resolution, provides that any disputes, controversies, or differences relating to the agreement "shall be submitted to binding arbitration" in Los Angeles, California.  Article 11.1 further provides that "[t]he decision arrived at by the Arbitrator shall be final and binding and no appeal shall lie therefrom.  Judgment upon the award rendered by the Arbitrator may be entered in any court of appropriate jurisdiction."

Article 13.2 of the agreement, which addresses notices, states that "[a]ny notice or other document required or permitted to be given under this Agreement shall be in writing and shall be given by delivery or sent by facsimile, electronic mail[,] or similar electronic communications . . . ."  The same article further provides, "[a]ny notice or document given as aforesaid shall be deemed to have been effectively given and received, if delivered, on the date of such delivery, or, if sent by facsimile, electronic

2

mail[,] or similar electronic communications, on the next Business Day following such transmission."

### B.    The Interim Arbitration Award

Disputes subsequently arose between the parties, they proceeded to arbitration, and an evidentiary hearing was held in October 2023.  In May 2024, the arbitrator issued a record of proceedings and interim decision.  Just a few months later, the arbitrator granted Izhaky's attorney's motion to withdraw as counsel.

About a month after Izhaky's attorney withdrew, the arbitrator issued an interim award finding Zheng was a 50% shareholder in UST and a member of the board of directors—and had been both since he made capital contributions in 2020.  The arbitrator's interim award stated it was intended to be enforceable by a court of record and could be presented to a court for enforcement.

Zheng filed a petition to confirm the interim award.  The proof of service attached to the original petition asserted Zheng served the petition on Izhaky via email.  Zheng later filed a notice of hearing on the petition to confirm the interim award, which he also served by email.

Izhaky filed a peremptory challenge to the assigned judicial officer.  The peremptory challenge was granted and the matter was reassigned.  As a result, the hearing on the petition to confirm the interim award was rescheduled.

The trial court held a hearing on the petition to confirm the interim award in February 2025.  According to a minute order issued in connection with the hearing (the only document

3

memorializing the hearing in the appellate record), the court granted the petition and Izhaky did not appear at the hearing.

### C. The Petition to Confirm the Final Award

In March 2025, the arbitrator issued a record of proceedings and final award. Among other things, the final award ordered Izhaky to disgorge and pay $4,498,912.95 to UST. It also ordered Izhaky and UST to pay Zheng $141,052.94 in litigation costs.

Zheng filed a petition to confirm the final award on March 17, 2025. A proof of service for that petition is not included in the appellate record.

#### 1. Zheng's ex parte application to confirm the award or advance the hearing on the petition

When Zheng filed the petition to confirm the arbitration award, he also filed a notice of hearing, which reflected the hearing was set for May 7, 2025. The same day, Zheng filed an ex parte application to confirm the final arbitration award, or alternatively, to advance the hearing date on the petition. In a declaration submitted in support of the ex parte, Zheng's attorney asserted she had served the petition on Izhaky by email and overnight mail the same day.

A minute order from the hearing on Zheng's ex parte application reveals Izhaky appeared and represented to the court that he intended to retain counsel. The court, on its own motion, continued the ex parte application to April 28, 2025. The trial court suggested that Izhaky's prior counsel from the arbitration appear on that date unless Izhaky obtained new counsel.

4

On or around April 9, 2025, Izhaky mailed a letter to the trial court asking the court to postpone the May 7, 2025, hearing on the petition to confirm the arbitration award until sometime in June so Izhaky could obtain counsel.

Prior to the continued hearing, Zheng filed a reply in support of his ex parte application. Zheng asserted Izhaky had improperly mailed, but not filed, the April 9 letter seeking to delay the proceedings until June 2025. Zheng additionally argued the court should reject that request because Izhaky already had more than adequate time to find an attorney, because the only matter remaining before the court was the ministerial task of confirming the final award (there being no grounds to correct or vacate the award), and because Izhaky's request was a delay tactic and Zheng would suffer significant prejudice if the application was not heard as soon as possible.

The trial court held a hearing on April 28, 2025, which both Zheng and Izhaky (still not represented by counsel) attended. The trial court denied Zheng's application to confirm the arbitration award or advance the previously noticed May hearing when the court was scheduled to consider confirmation.

### 2. *Izhaky's request for a continuance*

Izhaky thereafter filed on April 30, 2025, a declaration seeking to continue the May hearing on the petition to confirm the arbitration award. (As we later discuss, this filing constituted a general appearance in the action.) Izhaky asserted he was actively seeking to retain counsel and had already contacted four law firms. He asked the trial court to continue the hearing for 30 to 45 days.

5

Then, a week before the scheduled confirmation hearing, Izhaky filed an ex parte application to quash service of process and again requested in that same filing that the court continue the confirmation hearing in any event. On the question of service, Izhaky maintained Zheng served the petition to confirm the arbitration award by email and FedEx—which was insufficient because he believed the petition should have been served in the manner of a summons. On the question of a continuance, Izhaky asserted he served as the sole caregiver for his father during the final weeks of his life, his father died on April 16, 2025, and Izhaky observed shiva (the Jewish mourning period) for seven days thereafter. Izhaky also claimed he "first viewed the public docket and became aware of the Petition's existence on April 18, 2025." Izhaky represented he contacted four litigation firms between April 18 and May 2, all four declined due to conflicts, and he had already reached out to three additional firms.[1]

Zheng opposed Izhaky's ex parte application. Zheng argued service of the petition was proper because the shareholders' agreement provided any notice required or permitted to be given under the agreement could permissibly be served by email.

_____

[1]     Izhaky also filed a supplemental opposition to the petition to confirm the final award that reiterated his argument that he had not been properly served, that reminded the court he had a motion to quash pending, and that asked the court to either deny the petition or continue the hearing by 30 days. Zheng, in turn, filed an opposition to, and motion to strike, Izhaky's supplemental opposition, which Zheng contended was untimely. Zheng argued there was no good cause to extend the deadline to file a response or petition to vacate or correct the award.

Zheng also argued Izhaky had already appeared in the action and service by email was therefore sufficient. Zheng further contended the validity of service was irrelevant because Izhaky had made general appearances in court after the petition was filed. As to the request for a continuance, Zheng argued there was an ongoing risk any further delay would allow Izhaky to drain UST's corporate treasury.

Izhaky and counsel for Zheng made telephonic appearances at the hearing to consider Izhaky's ex parte application and the petition to confirm the arbitration award. The appellate record does not include either a transcript of that hearing or a settled statement recounting the proceedings. A minute order issued in connection with the hearing indicates the trial court denied Izhaky's application and granted the petition to confirm the arbitration award after the matter was "argued and submitted." A judgment was subsequently entered.

## II. DISCUSSION

Both of Izhaky's arguments for reversal fail. Izhaky made a general appearance in the action when he filed his declaration requesting the trial court continue the hearing on the petition (which he filed before seeking to quash service). That means the defects in service of process he now alleges are irrelevant. Izhaky's claim that it was an abuse of discretion to deny his request to continue the confirmation hearing fails because the appellate record Izhaky has provided—including only a terse minute order and no transcript of the proceedings—does not suffice to affirmatively establish there was any error.

7

*A.    The Court Properly Denied the Request to Quash Service of Process*

The parties dispute whether Zheng properly served Izhaky with the petition to confirm the final arbitration award. Zheng contends he did because the terms of the shareholders' agreement authorized service by email. Izhaky contends he did not. It does not matter who is right because Izhaky made a general appearance that makes any service defect immaterial.

"A general appearance by a party is equivalent to personal service of summons on such party." (Code Civ. Proc., § 410.50, subd. (a).) "By generally appearing, a defendant relinquishes all objections based on . . . defective process or service of process." (*In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 8.) "A request for a continuance constitutes a general appearance because the relief could only be requested on a theory that a defendant was submitting to general jurisdiction of the court." (*City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 679-680; see also *Zobel v. Zobel* (1907) 151 Cal. 98, 101; *Knoff v. City etc. of San Francisco* (1969) 1 Cal.App.3d 184, 201; *366-386 Geary St., L.P. v. Superior Court* (1990) 219 Cal.App.3d 1186, 1194, fn. 2; *In re Marriage of Smith* (1982) 135 Cal.App.3d 543, 547.)

Izhaky generally appeared in the action on April 30, 2025, when he filed a document entitled, "Declaration of Daniel Izhaky in Support of Request for Continuance of Hearing on Petition to Confirm Arbitration Award." In his declaration, Izhaky asked the court to continue the hearing on Zheng's petition to confirm the arbitration award. This constituted a general appearance.[2]

---

[2]    "An appearance at a hearing at which ex parte relief is sought, or an appearance at a hearing for which an ex parte

8

B.      *Izhaky Has Not Demonstrated the Trial Court Abused Its Discretion by Denying His Request for a Continuance*

"'"Generally, power to determine when a continuance should be granted is within the discretion of the court, and there is no right to a continuance as a matter of law."'" (*American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1280.)  A judgment or order of the lower court is presumed correct; the appellant has the burden of overcoming this presumption by producing an adequate record affirmatively showing the trial court erred.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.)  In the absence of an adequate record

---

application for a provisional remedy is made, is not a general appearance." (Code Civ. Proc., § 418.11.)  However, the declaration Izhaky filed on April 30, 2025, was not filed in connection with any ex parte proceedings.  It was filed after the trial court denied Zheng's ex parte request to either grant the petition or advance the confirmation hearing.  The April 30 declaration seeking a continuance also addressed only the regularly noticed hearing on the petition, not any ex parte proceedings, and it was filed *before* Izhaky filed, on May 2, 2025, his ex parte application to quash service and continue the confirmation hearing (which was accompanied by a declaration substantively different from the April 30, 2025, declaration). Even assuming the ex parte request for an order quashing service was procedurally proper, it did not prevent Izhaky from making a general appearance.  (*Air Machine Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 426 [party generally appears in an action if they fail to file a motion to quash before or simultaneously with an act that would otherwise constitute a general appearance].)

that permits us to assess whether the trial court abused its discretion, "[w]e cannot presume the trial court has erred." (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447; see also *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187-188.)

Izhaky contends the trial court abused its discretion because he demonstrated good cause for a continuance and the trial court made no effort to analyze the difficult situation in which Izhaky found himself.[3] The appellate record Izhaky has provided does not back up this assertion. There is no written order, or statement in the minute order, explaining the court's decision. There is thus nothing in the record that demonstrates the trial court did not, in fact, analyze Izhaky's proffered evidence and then exercise its discretion to deny the request. "In the absence of a[n adequate] record, we will not disturb the implied finding of the trial court that [Izhaky] had failed affirmatively to show good cause for the continuance." (*In re Marriage of Teegarden* (1986) 181 Cal.App.3d 401, 407.)

---

[3]     Izhaky also argues the trial court abused its discretion in denying his request to continue the hearing in part because "Izhaky was never served with the petition, and only became aware of the May 7th hearing on March 17." March 17, however, was the same day the final arbitration award was filed. So he had ample notice of the hearing and this could not be grounds for finding an abuse of discretion.

## DISPOSITION

The judgment is affirmed.  Zheng is awarded costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.

We concur:



MOOR, J.



KIM (D.), J.